IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02733-STV-NRN

BIONCA CHARMAINE ROGERS,
CATHY BEGANO,
ANDREW ATKINS, and
MARC TREVITHICK,

    Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
RICK RAEMISCH, in his official capacity,
RYAN LONG, in his official capacity, and
MIKE ROMERO, in his official capacity,

    Defendants.

---

LEONID RABINKOV,
CATHY BEGANO,
ANDREW ATKINS, and
MARC TREVITHICK,

    Plaintiffs,

v.

COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

### CONSENT DECREE

This Consent Decree is made this 7th day of February 2020 by and among Bionca Charmaine Rogers, Andrew Atkins, Marc Trevithick, and Leonid Rabinkov (collectively "Plaintiffs"), and the Colorado Department of Corrections ("CDOC").

## RECITALS

WHEREAS, Plaintiffs have filed consolidated cases against CDOC alleging that the lack of videophones in CDOC facilities for deaf and hard of hearing prisoners and prisoners wishing to contact deaf or hard of hearing friends, family, and other community members violates the First Amendment to the United States Constitution, Title II of the Americans with Disabilities Act ("Title II" or "ADA"), 42 U.S.C. §§ 12131 *et seq.*, and Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794. Civil Action No. 16-cv-02733-STV-NRN (D. Colo.) (the "Lawsuit");

WHEREAS, CDOC denies and continues to deny any and all liability or wrongdoing to Plaintiffs. By entering into this Consent Decree, CDOC does not admit any impropriety, wrongdoing, or liability of any kind whatsoever, including any as to the claims raised in the Lawsuit, and on the contrary, expressly denies the same; and CDOC has entered into this Consent Decree solely for the purpose of avoiding the expense, inconvenience, distraction, and delay of the Lawsuit, without admitting any wrongdoing or liability whatsoever. The Parties agree that this Consent Decree does not constitute evidence of or an admission of any liability, omission, or wrongdoing of any kind by CDOC, the State of Colorado, or any former or current employee, official, agent, or attorney of CDOC or State of Colorado;

WHEREAS, the Plaintiffs and CDOC desire to settle the claims asserted in the Lawsuit and to enter into a Consent Decree related to the Lawsuit and the claims giving rise thereto, in accordance with the provisions and upon the terms and conditions hereafter set forth.

NOW, THEREFORE, with the consent of the parties, it is hereby ORDERED, ADJUDGED, AND DECREED that:

**I.  DEFINITIONS.**

   A. "AR" means an Administrative Regulation of the Colorado Department of Corrections.

   B. "CDOC Facility" means any facility in which CDOC currently incarcerates – or during the Term of this Consent Decree will incarcerate – Prisoners, provided that the terms of this Consent Decree do not require CDOC to place sign language videophones in privately-owned facilities.

   C. "CIPS List" means the Colorado Inmate Phone System list described in AR 850-12.

   D. "Deaf or Hard of Hearing" means unable to hear in either one or both ears (unaided by hearing aids or any medical device) to a sufficient degree so as to be unable to understand the spoken word using a conventional telephone, particularly with the level of noise in the prison environment. Individuals who cannot hear in one ear to a decibel level of 40 are presumed to meet the definition of Deaf or Hard of Hearing. For purposes of this Consent Decree, a Prisoner shall be deemed to meet the definition of "Deaf or Hard of

Hearing" at the earliest of these points in time: (a) if the Prisoner, as of the Effective Date of this Consent Decree, has already been designated by, or treated as, Deaf or Hard of Hearing by CDOC; or (b) if an audiological examination of the Prisoner demonstrates that the Prisoner meets the definition.

E. "Effective Date" has the meaning set forth in Paragraph XIII below.

F. "Day Hall" means an area of a Housing Unit in a CDOC facility within which a Prisoner can circulate at will without permission within the time frames permitted by prison staff for that Housing Unit

G. "I/A" means an Implementation/Adjustment to an AR applicable to a specific CDOC Facility.

H. "Legal Calls" shall have the meaning described in AR 850-12, Paragraph K.

I. "Party" refers to Plaintiffs and/or CDOC.

J. "Prisoner" means an individual incarcerated in the custody of CDOC.

K. "Term" shall have the meaning described in Paragraph XVI below.

L. "TTY" means teletypewriter or telecommunications device for the deaf.

M. "Sign Language Videophone" means a device capable of placing and receiving video telephone calls, including video relay calls.

N. "Videophone-Eligible Prisoner" includes both Prisoners who communicate in sign language because they are Deaf or Hard of Hearing, and Prisoners who place calls to individuals who communicate in sign language because they are Deaf of Hard of Hearing. When a Prisoner who is not Deaf or Hard of Hearing identifies a need to communicate in sign language, CDOC may require the Prisoner to provide a document from a medical provider or otherwise substantiating that the individual with whom the Prisoner seeks to communicate, uses sign language because they are Deaf of Hard of Hearing.

O. "VRS" means video relay service, a service permitting deaf people to use videophones to communicate through a video relay operator with hearing people who are using a conventional telephone.

II. **PROVISION OF SIGN LANGUGE VIDEOPHONES AT CDOC FACILITIES.**

  A. Requirement and Location of Sign Language Videophones.

  1. Within 90 days of the Effective Date of this Consent Decree, CDOC will install:

      a. two additional Sign Language Videophones at the Colorado Territorial Correctional Facility (CTCF) (for a total of five) as follows:

          i. one Sign Language Videophone in a cell house; and

          ii. one Sign Language Videophone in the infirmary;

      b. two additional Sign Language Videophones at the Denver Women's Correctional Facility (DWCF) (for a total of three) as follows:

          i. one Sign Language Videophone in the Diagnostic Unit; and

          ii. one Sign Language Videophone in Unit 3.

      c. two Sign Language Videophones in Denver Reception and Diagnostic Center (DRDC) as follows:

          i. one Sign Language Videophone in the intake unit; and

          ii. one Sign Language Videophone in the infirmary.

  2. If, at the Effective Date, a Videophone-Eligible Prisoner is housed in a facility not listed in this provision and will be at said facility for more than 2 weeks, CDOC will install a Sign Language Videophone that will be accessible to the Videophone-Eligible Prisoner within 30 days of the Effective Date. If a Videophone-Eligible Prisoner is transferred to a facility not listed in this provision and will be at the facility for more than 2 weeks, CDOC will install a Sign Language Videophone that will be accessible to the Videophone-Eligible Prisoner within 30 days of the Prisoner's arrival at the facility.

  3. CDOC shall continue to make TTYs available to Prisoners who require and prefer them as a means of telecommunication.

  B. Eligibility to Use the Sign Language Videophone: All Videophone-Eligible Prisoners shall be permitted to use Sign Language Videophones. Videophone-Eligible Prisoners must still maintain an approved CIPS List.

   C. Sign Language Videophones shall be available on terms equal to conventional telephones including but not limited to:

      1. Videophone-Eligible Prisoners will be able to use a Sign Language Videophone during all hours during which hearing prisoners may use conventional phones;

      2. CDOC shall not curtail access to a Sign Language Videophone except when access to conventional phones is curtailed for hearing Prisoners;

      3. Videophone-Eligible Prisoners shall not be required to take additional steps to use a Sign Language Videophone beyond those required of other Prisoners to use the telephone. For example, without limitations, Videophone-Eligible Prisoners shall not be required to sign up in advance to use the Sign Language Videophone. While CDOC may maintain a sign-up sheet to assist with the convenient management of Sign Language Videophone use, it may not refuse a request for unplanned use of the Sign Language Videophone if it is not currently in use at the time the request is made;

      4. CDOC will make reasonable efforts to protect the privacy of calls placed by Videophone-Eligible Prisoners using Sign Language Videophones, including but not limited to making reasonable efforts to limit the visibility of the Sign Language Videophone screen while in use.

      5. If the Sign Language Videophone system in use by the CDOC requires CDOC staff to place the outgoing call on behalf of the Prisoner, both the staff and the equipment necessary to place the Sign Language Videophone call shall, except in cases of emergency, be available in the close vicinity of the Sign Language Videophone;

      6. Where Prisoner telephone calls are time-limited, CDOC will provide inmates who are Deaf or Hard Of Hearing who use Sign Language Videophones two times the normal length of time to make those calls, due to the need for assistance in placing the call and the slower nature of VRS communications compared with direct voice communications;

      7. CDOC shall ensure that all functions for which hearing Prisoners use the telephone system, including but not limited to ordering canteen or commissary items and checking account balances, are available using the Sign Language Videophone, TTY, or other medium that is accessible to Deaf and Hard of Hearing Prisoners;

      8. Sign Language Videophone calls will be monitored and recorded on the same terms as CDOC monitors and records calls on conventional phones;

      9. CDOC shall not impose a charge or surcharge on Prisoners for using the Sign Language Videophone beyond any charges equivalent to amounts charged hearing Prisoners; and

    10. Should any future technology such as, but not limited to, tablets expand the availability of phone service to hearing prisoners, CDOC shall provide equivalent availability of Sign Language Videophones to Videophone-Eligible Prisoners.

  D. Maintenance and Training:

    1. CDOC shall make reasonable efforts to maintain all Sign Language Videophones in working condition at all times.

    2. CDOC shall make all reasonable efforts to maintain its Internet connection to ensure sufficient speed, bandwidth, and quality to support Sign Language Videophone calls.

    3. CDOC shall attempt to resolve complaints about any malfunctioning Sign Language Videophone equipment or connectivity within a reasonable time of receiving that complaint. In case of a malfunctioning Sign Language Videophone, a Videophone-Eligible Prisoner shall notify the shift commander by kite. CDOC shall attempt to resolve complaints about any malfunctioning Sign Language Videophone equipment or connectivity within a reasonable time of receiving that complaint, but in any event shall notify the provider and request repair no later than two business days after receiving the complaint.

    4. If a Sign Language Videophone or connection cannot be repaired to full working condition within two business days, CDOC shall permit Videophone-Eligible Prisoners to have access to another functioning Sign Language Videophone in the same facility on the terms required by Paragraph II.C above during the period that the original Sign Language Videophone is out of service, to the extent such an alternative Sign Language Videophone is available.

    5. CDOC shall ensure that sufficient staff members, including the Americans with Disabilities Act Inmate Coordinator and at least one staff member per Facility per shift, are adequately trained in the operation of the Sign Language Videophones to ensure they can demonstrate its use and troubleshoot equipment malfunctions.

### III. NOTICE TO CURRENT AND INCOMING PRISONERS

  A. CDOC will ensure that all Videophone-Eligible Prisoners are aware of the availability of Sign Language Videophones as follows:

    1. Within 30 days of the Effective Date, CDOC will post Exhibit A in all Day Halls of and will make it available via Titler.

    2. CDOC will incorporate the information in Exhibit A into the next printed versions of the handbook for each CDOC Facility.

B. Within 90 days of the Effective Date, CDOC will amend its Administrative Regulations, including but not limited to AR 850-12, and any applicable I/As as necessary to implement the terms of this Consent Decree.

IV. **MONITORING**

A. CDOC will maintain the following records:

1. A list of Videophone-Eligible Prisoners;

2. A list of any Prisoners who requested Sign Language Videophone accommodation through the ADA Inmate Coordinator (AIC) but were denied this requested accommodation;

3. A log documenting any report that a Sign Language Videophone is not working properly, including the date of report, all steps taken (with dates) to repair or replace the Sign Language Videophone, and the date the Sign Language Videophone was repaired and in operation.

B. CDOC will provide Plaintiffs' counsel with copies of all of the records listed in Paragraph IV(A) on a monthly basis for the first six months following the Effective Date, and quarterly thereafter for the remainder of the Term of this Consent Decree.

V. **DISPUTE RESOLUTION AND ENFORCEMENT**

A. Informal Dispute Resolution:

1. If a Plaintiff or CDOC believes that a dispute exists relating to the performance or interpretation of this Consent Decree, he/she/it shall notify the other Party in writing, describing the dispute and clearly identifying that they are invoking the dispute resolution process.

2. The other Party shall respond in writing to such notice within 10 business days of receipt of the notice.

3. Within 10 business days of receipt of the response described in the previous Subparagraph, counsel for both Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally.

4. Only if the Parties are unable to resolve the dispute through the informal process described in this Paragraph V(A) may the dispute be submitted for judicial resolution.

B. Resolution by the Court

1. If, after completing the Informal Dispute Resolution process described in Paragraph V(A), either party believes that the other has breached this Consent Decree, that party may submit the dispute for resolution by Judge Scott T. Varholak or, if Judge Varholak is unavailable, to another judge in the United States District Court for the District of Colorado.

2. The Parties agree that the sole remedy for violation of Paragraph II, III, or IV will be for specific performance. In resolving the dispute, the Court will apply the standards of Title II and Section 504.

3. The prevailing party in any court proceeding shall be entitled to his/her/their/its attorneys' fees and costs pursuant to 42 U.S.C. § 12205 and the cases interpreting that provision including the fee-shifting standards in *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 422 (1978).

## VI.   PRISON LITIGATION REFORM ACT

A. This Settlement is subject to the provisions of the Prison Litigation Reform Act.

B. For purposes of this Consent Decree only and in order to settle this matter, the parties agree and represent that this Consent Decree complies in all respects with the provisions of 18 U.S.C. § 3626(a).

C. The parties agree and represent that the prospective relief specifically contained in this Consent Decree is narrowly drawn, extends no further than necessary, is the least intrusive means necessary to address the Plaintiffs' allegations, and is not intended to have an adverse impact on public safety or the operation of a criminal justice system.

## VII.   COMMUNICATIONS.

Any notice or communication required or permitted to be given to Plaintiffs or Plaintiffs' Counsel or CDOC under this Consent Decree shall be given in writing by email or U.S. Mail, addressed as follows:

To CDOC:

Maritza Dominguez Braswell
Kathleen Spalding
Nicole Gellar
Colorado Department of Law
Civil Litigation and Employment Law Section
Ralph L. Carr Colorado Judicial Center

1300 Broadway, 10th Floor Denver, Colorado 80203
Maritza.Braswell@coag.gov
Nicole.gellar@coag.gov
kit.spalding@coag.gov

To Plaintiffs or Plaintiffs' Counsel:

Amy F. Robertson
Martha M. Lafferty
Civil Rights Education and Enforcement Center
1245 E. Colfax, Suite 400
Denver, CO 80218
arobertson@creeclaw.org
mlafferty@creeclaw.org

If the above addresses or the appropriate contact change, it is the responsibility of the Party whose address is changing to give written notice of said change to all other Parties within 30 business days following the effective date of said change.

## VIII. MODIFICATION OF CONSENT DECREE.

This Consent Decree can only be amended by written agreement of the Parties hereto and approval by the Court.

## IX. SEVERABILITY

If any provision or any part of this Consent Decree shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling or regulation, then the remaining provisions of this Consent Decree shall remain effective and enforceable.

## X. EXECUTION IN COUNTERPARTS

This Consent Decree may be signed in counterparts, each of which will be deemed an original for all purposes and all of which together will constitute one and the same agreement. This Consent Decree may be executed by facsimile or electronic signature by any party and such signature will be deemed binding for all purposes.

## XI. EFFECTIVE DATE

This Consent Decree shall not be deemed valid until it is approved and entered as an Order of this Court. The Parties agree that this Consent Decree will not be presented to the Court for approval unless and until separate agreements on attorney fees, costs, and damages

have been approved by the State Claims Board and by the Controller for the State of Colorado. The Effective Date of this Consent Decree is the date it is entered as an Order of this Court.

## XII. ENTIRE AGREEMENT

This Consent Decree contains all the agreements, conditions, promises, and covenants among Plaintiffs and CDOC regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations, or understandings, either written or oral, with respect to the subject matter of this Consent Decree and the non-monetary relief described herein. This Consent Decree is conditioned upon the execution of separately-negotiated agreements providing for payment of damages to Plaintiffs and attorneys' fees to Plaintiffs' counsel.

## XIII. JURISDICTION, VENUE, AND CONTINUING JURISDICTION

A. This Court has jurisdiction over the above-captioned action pursuant to 28 U.S.C. § 1331 and 1343. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 because all parties are located in the District of Colorado and because the alleged events, acts, and omissions giving rise to Plaintiffs' claims occurred in the District of Colorado.

B. the Court shall retain jurisdiction over this case until termination of this Consent Decree in order to enforce or modify the Consent Decree and to interpret the rights and obligations of the parties to this Consent Decree. During the pendency of this Consent Decree, any party may apply to the Court for any relief necessary to construe and effectuate this Consent Decree.

## XIV. TERM AND DISMISSAL

The term ("Term") of this Consent Decree shall be a period of two years from the Effective Date or the resolution of any dispute pursuant to Paragraph V hereof, whichever is later. After the term of this Consent Decree has elapsed, this Consent Decree will automatically expire by its own terms except as expressly provided. This action shall be dismissed with prejudice, under Federal Rule of Civil Procedure 41, within 30 days after expiration of the Term of this Consent Decree.

## XV. FINAL JUDGMENT

Upon entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between and among the Plaintiffs and Defendants. The Court enters this judgment as a final judgment under Federal Rules of Civil Procedure 54 and 58 that is fully enforceable by all plenary powers of the Court

IN WITNESS WHEREOF, the Parties have executed this Consent Decree of the date first written above.

_____  Date: 1·23·2020
Cathy Begano

_____  Date: 01/23/2020
Bionca Charmaine Rogers

_____  Date: 1/27/2020
Leonid Rabinkov

_____  Date: 1/27/2020
Andrew Atkins

_____  Date: 1·27·20
Marc Trevithick


COLORADO DEPARTMENT OF
CORRECTIONS

By: _____  Date: _____
Dean Williams
Executive Director

_____    Date: _____

Cathy Begano

_____    Date: _____

Bionca Charmaine Rogers

_____    Date: _____

Leonid Rabinkov

_____    Date: _____

Andrew Atkins

_____    Date: _____

Marc Trevithick

COLORADO DEPARTMENT OF
CORRECTIONS

By: _____/s/ Bo_____    Date: 2-7-2020
Dean Williams
Executive Director

Approved as to form:

CIVIL RIGHTS EDUCATION AND
ENFORCEMENT CENTER

By: _____          Date: 1/28/2020
Amy F. Robertson
Counsel for Plaintiffs


COLORADO DEPARTMENT OF LAW

By: _____          Date: 2/6/20

Counsel for Colorado Department
of Corrections

12

IT IS SO ORDERED.

BY THE COURT:

_____
Scott T. Varholak
United States Magistrate Judge

Dated: